## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GERARD VONDRAKE HARRIS,
    *Plaintiff*,

    v.

JONATHAN DAVID BERCHEM,
PAIGE BODNAR
    *Defendants*.

No. 3:24-cv-829 (VAB)

## RULING ON MOTION TO DISMISS

Gerard VonDrake Harris ("Mr. Harris" or "Plaintiff"), appearing *pro se*, has sued

Milford City Attorney Jonathan David Berchem ("Attorney Berchem") and Milford Police

Officer Paige Bodnar ("Officer Bodnar") (collectively "Defendants") for claims of (1) assault

and battery with a deadly weapon, (2) kidnapping, (3) falsifying government documents, (4)

tampering with evidence, and (5) using excessive force. Compl., ECF No. 1-3 at 3 (May 6,

2024) ("Compl.").

The Defendants have filed a motion to dismiss Mr. Harris' Complaint for failure to

state a claim upon which relief can be granted. Mot. to Dismiss, ECF No. 15 (June 10, 2024)

("Mot.").

For the following reasons, the Complaint is **DISMISSED**, and Defendants' motion to

dismiss is **GRANTED**.

To the extent deficiencies identified in this Ruling and Order can be remedied, Mr.

Harris may file an Amended Complaint by **April 25, 2025**. If an Amended Complaint is not

filed by **April 25, 2025**, then this Complaint will be dismissed, with any federal claims

dismissed with prejudice, and any state law claims dismissed without prejudice, and the case

1

will be remanded back to the Connecticut Superior Court for the Judicial District of Fairfield at Bridgeport.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Factual Allegations[1]

On July 15, 2022, Officer Bodnar allegedly stopped and pulled over Mr. Harris and asked for him to show his identification. Compl. at 2.

Officer Bodnar allegedly told Mr. Harris that there was a warrant out for his arrest. *Id.* Mr. Harris allegedly asked Officer Bodnar what the arrest was for, and Officer Bodnar allegedly replied that she did not know but would hold Mr. Harris for a bit. *Id.*

Mr. Harris allegedly told Officer Bodnar that she cannot hold him without a warrant, and she allegedly said that she would hold Mr. Harris because the Bridgeport Police want Mr. Harris. *Id.*

Mr. Harris allegedly resisted arrest; however, he allegedly was arrested. *Id.* Mr. Harris allegedly asked to see the warrant; however, he was refused. *Id.*

While sitting in the Milford Police bullpen, Officer Bodnar allegedly searched Mr. Harris' wallet and allegedly threw away some of Mr. Harris' papers. *Id.*

When the Bridgeport Police allegedly came to receive Mr. Harris from the Milford Police, Mr. Harris allegedly asked the Bridgeport Police Officers to see the arrest warrant, but they allegedly replied that they did not have the warrant because "they are doing someone a favor." *Id.* at 2–3.

When Mr. Harris allegedly arrived at the Bridgeport Police station, he allegedly asked the booking officer for a copy of the warrant. *Id.*

---

[1] For purposes of this motion to dismiss, the Court considers the factual allegations from the Complaint to be true.

After the Bridgeport Police allegedly took Mr. Harris' information, they allegedly "made out a warrant." *Id.*

### B.     Procedural History

On April 15, 2024, Mr. Harris filed his Complaint in the Connecticut Superior Court for the Judicial District of Bridgeport. *See* Officer's Return, ECF No. 1-4 (May 6, 2024).

On May 6, 2024, the Defendants filed their notice of removal for Mr. Harris' action. Notice of Removal, ECF No. 1.

On June 10, 2024, the Defendants filed a motion to dismiss. Mot.

On June 17, 2024, Mr. Harris filed an objection to the Defendant's motion to dismiss. Objection, ECF No. 17 ("Obj.").

On June 27, 2024, the Defendants filed a reply to Mr. Harris' objection to the Defendant's motion to dismiss. Reply, ECF No. 20 ("Reply").

On July 2, 2024, Mr. Harris filed sur-reply to the Defendants' motion to dismiss. Objection, ECF No. 21 ("Sur-Reply").

On July 16, 2024, the Defendants filed a motion to strike Mr. Harris' sur-reply. Motion to Strike, ECF No. 22.

On July 31, 2024, the Court denied the Defendant's motion to strike. Order, ECF No. 24.

## II.     STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification ... to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs.*,

4

*Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## III.    DISCUSSION

Mr. Harris' Complaint seeks relief under 42 U.S.C. § 1983 for violations of his civil rights and alleges that the Defendants (1) committed assault and battery with a deadly weapon, (2) kidnapped him, (3) falsified government documents, (4) tampered with evidence, and (5) used excessive force. Notice of Removal, ECF No. 1 at 1; Compl. at 3.

The Court will address each of these claims in turn.

### A.        The Claims Against the City Attorney

Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999).

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (citation omitted)). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) ("[A] plaintiff must plead and prove the elements of the underlying

constitutional violation directly against the official without relying on a special test for supervisory liability.").

Mr. Harris has named the Milford City Attorney, Mr. Berchem, in this lawsuit and "charges" him with "(1) assault and battery with a deadly weapon, (2) kidnapping, (3) falsifying government documents, (4) tampering with evidence under police accountability act bill number 6004, and (5) using excessive force." Compl. at 3.

In their motion to dismiss, the Defendants argue that because "there are no allegations that Attorney Berchem was present for or participated in the alleged deprivations, the claims against him are subject to dismissal and judgment should enter in his favor." Mot. at 4.

In his objection, Mr. Harris simply states that he objects to "any and all motions and documents concerning of [sic] this case that the Defendant's lawyer has filed." Obj. at 1.

In response, the Defendants argue that "[s]ince the plaintiff has failed to address the substantive arguments raised by the defendants, his opposition to those bases should be deemed abandoned and the defendants' motion to dismiss should be granted." Reply at 3. Substantively, they also argue that "the plaintiff does not elaborate or allege that the defendants were personally involved in the alleged deprivations, which are necessary elements of his claims for damages under § 1983." *Id.* at 4.

In his sur-reply, Mr. Harris again objects to "any and all motions and documents concerning of [sic] this case that the Defendant's lawyer has filed." Sur-Reply at 1.

The Court disagrees.

While the Court can deem Mr. Harris' claims to have been abandoned for not substantively responding to the Defendants' arguments in his opposition, given Mr. Harris' *pro se* status, the Court will address the merits of Defendants' arguments. *See e.g. Obah v. Dep't of*

*Admin. for Children's Servs.*, No. 1:23-CV-04997 (GHW) (SDA), 2024 WL 2848903, at *7 n.9 (S.D.N.Y. May 2, 2024) ("In their reply memorandum, Defendants further argue that Plaintiff's § 1981 claim should be dismissed as abandoned because he failed to address such claim in his opposition papers. Given Plaintiff's *pro se* status, the Court declines to recommend dismissal based on Plaintiff's failure to address this claim in his opposition") (internal citation omitted), *report and recommendation adopted sub nom. Obah v. Dep't of Admin. for Child. Servs.*, No. 1:23-CV-4997-GHW-SDA, 2024 WL 2848883 (S.D.N.Y. May 30, 2024); *Tsismentzoglou v. Milos Estiatorio Inc.*, No. 18-CV-9664 (RA), 2019 WL 2287902, at *2 n.3 (S.D.N.Y. May 29, 2019) ("Defendant argues, in its reply brief, that, because Plaintiff's opposition letter "does not oppose the arguments raised in Milos' dismissal motion, he has abandoned his claims. A pro se plaintiff, however, should not be presumed to have abandoned his claims because he did not address a defendant's specific arguments. Indeed, "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).") (some internal citations omitted).

Even without deeming Mr. Harris' arguments abandoned, his claims against the Milford City Attorney still fail. His two-page narrative Complaint does not allege any involvement by Mr. Berchem in any of the events from his stop or his detention. *See generally* Complaint.

Without any allegations of direct or even indirect participation in the "charges" that Mr. Harris is alleging in his Complaint, any claim against Mr. Berchem fails to allege the personal involvement necessary for them to proceed. *See e.g.*, *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (stating that personal involvement means "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as

"ordering or helping others to do the unlawful acts") (citation omitted); *Smith*, 21 F.3d at 501 ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991))); *see also Lawrence v. Finnucan*, No. 3:20-cv-1678 (VAB), 2021 U.S. Dist. LEXIS 87694, at *6 (D. Conn. May 7, 2021) ("As a preliminary matter, [a plaintiff] must allege each defendant's personal involvement in the denial of his rights").

Accordingly, the claims against Milford City Attorney Berchem will be dismissed.

**B.  The Claims Against Officer Bodnar**

Mr. Harris has named Officer Bodnar in this lawsuit and "charges" her with "(1) assault and battery with a deadly weapon, (2) kidnapping, (3) falsifying government documents, (4) tampering with evidence under police accountability act bill number 6004, and (5) using excessive force." Compl. at 3.

Consistent with the principle that *pro se* filings "must be construed liberally and interpreted to raise the strongest arguments that they suggest," *Sykes*, 723 F.3d at 403 (quoting *Triestman*, 470 F. 3d at) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants), the Court will address each of Mr. Harris' alleged claims against Officer Bodnar in turn.

1.  The Assault and Battery with a Deadly Weapon Claim

"A civil assault is the intentional causing of imminent apprehension of harmful or offensive contact in another. Actual, physical contact (technically defined as 'battery') is not necessary to prove civil assault[.]" *Maselli v. Reg'l Sch. Dist. No. 10*, 235 A.3d 599, 613 (Conn. Ct. App. 2020) (internal citations and quotation marks omitted).

"An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results. An actionable assault and battery may be one committed willfully or voluntarily, and therefore intentionally; one done under circumstances showing a reckless disregard of consequences; or one committed negligently. Intentional conduct is, therefore, not always required for assault and battery." *Id.* (internal citations and quotation marks omitted).

"To establish a claim for assault and battery, plaintiff must prove that . . . the application of force or violence was unlawful." *Conroy v. Caron*, 275 F. Supp. 3d 328, 356 (D. Conn. 2017) (quoting *Odom v. Matteo*, 772 F.Supp.2d 377 (D. Conn. 2011) (quoting *Williams v. Lopes*, 64 F. Supp. 2d 37, 47 (D. Conn. 1999) (citing *Moriarty v. Lippe*, 294 A.2d 326, 335 (Conn. 1972)))).

Under Connecticut law, a police officer "is justified in using physical force upon another person when and to the extent that he or she reasonably believes such use to be necessary to: (1) Effect an arrest or prevent the escape from custody of a person whom he or she reasonably believes to have committed an offense, unless he or she knows that the arrest or custody is unauthorized; or (2) defend himself or herself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape." Conn. Gen. Stat. Ann. § 53a-22.

"Connecticut appellate courts have interpreted C.G.S. § 53a-22(b) as permitting a police officer's use of force essentially to the same extent as permitted by the Fourth Amendment." *Cook v. Phillips*, No. 3:19CV1982 (MPS), 2023 WL 257899, at *7 (D. Conn. Jan. 18, 2023) (citing *State v. Smith*, 807 A.2d 500, 515 (Conn. Ct. App. 2002)).

Mr. Harris has brought an assault and battery with a deadly weapon claim against Officer Bodnar. *See* Compl. at 3.

In his Complaint, Mr. Harris alleges that when Officer Bodnar stopped him, "she told [Mr. Harris] that [he] had a warrant for [his] arrest . . . and that she [was] going to hold [him] for [the Bridgeport Police Department] and [Mr. Harris] told her that she cannot hold [him] without a warrant and she said to [him that she was] going to hold [him] because [the Bridgeport Police] want [him]." Compl. at 2. After that discussion, Mr. Harris allegedly resisted the arrest and "they arrested [him] without [his] consent". *Id.*

The Defendants argue that "it is well established that lawful handcuffing 'necessarily carries with it the right to use some degree of physical coercion or threat to effect it.'" Mot. at 8 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Moreover, the Defendants argue that "the objectively reasonable force set forth above in handcuffing the plaintiff on ample probable cause cannot give rise to an assault and battery claim," since "applications of force deemed reasonable under the Fourth Amendment likewise satisfy Connecticut's justification of force statute." Mot. at 8–9.

In his objection, Mr. Harris simply states that he objects to "any and all motions and documents concerning of [sic] this case that the Defendant's lawyer has filed." Obj. at 1.

In response, the Defendants argue that "[t]he plaintiff has done nothing to challenge the well-settled principles that efforts to enforce criminal statutes through private civil lawsuits are routinely dismissed in this Court. . . . Nor has the plaintiff brought forth facts or argument to set forth a viable excessive force or derivative assault and battery claim against the defendants." Reply at 4.

10

In his sur-reply, Mr. Harris again objects to "any and all motions and documents concerning of [sic] this case that the Defendant's lawyer has filed." Sur-Reply at 1. Mr. Harris also states that "Officer Bodnar, and one other officer used deadly force on me with a weapon." *Id.*

The Court disagrees.

Because this claim arises out of Mr. Harris's interaction with a police officer, this claim is indistinguishable from his excessive force claim discussed further below. *See Cook*, 2023 WL 257899, at *7 ("Connecticut appellate courts have interpreted C.G.S. § 53a-22(b) as permitting a police officer's use of force essentially to the same extent as permitted by the Fourth Amendment.") (citing *Smith*, 807 A.2d at 515); *Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").

If Officer Bodnar merely used the force reasonably necessary to effectuate the arrest of Mr. Harris under a valid warrant, then that would not support an assault and battery claim under Connecticut law. *See* Conn. Gen. Stat. Ann. § 53a-22 (A police officer "is justified in using physical force upon another person when and to the extent that he or she reasonably believes such use to be necessary to: (1) Effect an arrest . . ."); Mr Harris's allegations in support of this claim, however, are fairly thin. *See, e.g.,* Sur-Reply at 1 (simply stating that "Officer Bodnar . . . used deadly force on me with a weapon."). Indeed, they appear to be to be nothing more than a formulaic recitation of the cause of action with no specific factual in support of it. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 ("While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (alteration in original) (citations omitted)). As a result, absent a more detailed explanation of what force was used, and how it legally exceeded the authority given to a police officer in such circumstances, this claim must fail.

Accordingly, the assault and battery claim will be dismissed.

### 2.  The "Kidnapping" Claim

"Kidnapping . . . [is a] criminal offense[] under the Connecticut General Statutes. The Connecticut Supreme Court has held that, unless private enforcement is expressly stated in a statute, there is a presumption in Connecticut that private enforcement does not exist." *Thomas Sentementes v. Town of Bethel*, No. 3:20CV580 (MPS), 2020 WL 5994950, at *12 (D. Conn. Oct. 9, 2020) (citing *Provencher v. Town of Enfield*, 936 A.2d 625, 629 (Conn. 2007)). "The burden is on the plaintiff to overcome that presumption and show that the statute creates an implied right of action." *Id.* (citing *Provencher*, 936 A.2d at 629).

Because this kidnapping claim also may be construed as a false arrest or false imprisonment clam, see *Sykes*, 723 F.3d at 403 (*Pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest.") (quoting *Triestman*, 470 F. 3d at 474) (internal quotation marks omitted), the Court will also consider whether the Complaint has sufficiently pled a claim on either of these grounds.

Under Connecticut law, "'[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another.'" *Outlaw v. City of Meriden*, 682 A.2d 1112, 1115 (Conn. Ct. App. 1996) (quoting *Green v. Donroe*, 440 A.2d 973, 974 (Conn. 1982)). In

*Outlaw*, the Connecticut Appellate Court stated that the applicable law for false arrest and false imprisonment "is identical," and therefore "there is no cause of action for false imprisonment if the plaintiff was arrested pursuant to a facially valid warrant." *Id.* at 1115 (describing the continuity of this rule across 180 years of case law); *see also Lo Sacco v. Young*, 564 A.2d 610, 617 (Conn. Ct. App. 1989) (stating that a claim for false imprisonment may not lie where "the arrest of the plaintiff is legally authorized"); *Love v. Town of Granby*, 2004 WL 1683159, at *4 (D. Conn. 2004).

The Defendants argue that "Plaintiff's bald legal conclusions that he was kidnapped . . . must be dismissed for failure to state a claim upon which relief can be granted because the plaintiff cannot privately enforce criminal statutes by filing a civil lawsuit." Mot. at 10.

In his objection, Mr. Harris simply states that he objects to "any and all motions and documents concerning of [sic] this case that the Defendant's lawyer has filed." Obj. at 1.

In response, the Defendants argue that "[t]he plaintiff has done nothing to challenge the well-settled principles that efforts to enforce criminal statutes through private civil lawsuits are routinely dismissed in this Court." Reply at 4.

In his sur-reply, Mr. Harris again objects to "any and all motions and documents concerning of [sic] this case that the Defendant's lawyer has filed." Sur-Reply at 1.

The Court disagrees.

Mr. Harris has not cited anything that suggests that he has the right to private enforcement of Connecticut's kidnapping statute or any other criminal statute. Therefore, he has not met his burden to overcome the presumption that criminal statutes do not provide for private enforcement. *See e.g.*, *Sementes*, 2020 WL 5994950, at *12 ("The burden is on the plaintiff to

overcome that presumption and show that the statute creates an implied right of action.") (citing *Provencher*, 936 A.2d at 629).

Accordingly, Mr. Harris' kidnapping claim will be dismissed.

As to any potential false arrest or false imprisonment claim, because Mr. Harris alleges having been arrested under a warrant, *Outlaw*, 682 A.2d at 1115 ("[T]here is no cause of action for false imprisonment if the plaintiff was arrested pursuant to a facially valid warrant."); *Lo Sacco*, 564 A.2d at 617 (stating that a claim for false imprisonment may not lie where "the arrest of the plaintiff is legally authorized"), he must "allege the invalidity of the arrest warrant." *Outlaw*, 682 A.2d at 1115. And, while Mr. Harris's allegations can plausibly be read as raising concerns about the validity of the arrest warrant, see *e.g.*, Compl. at 2–3 ("So I resisted the illegal arrest . . . So after they took all my information I gave them and made out a warrant"), his allegations do not specify, in anything other than the most conclusory fashion, how they would lead to a viable false arrest or false imprisonment claim under an invalid arrest warrant theory. *See Outlaw*, 682 A.2d at 1115 -1116 (requiring under an invalid arrest warrant theory "evidence to the effect that (1) the judge did not have the authority or jurisdiction to issue the warrant, (2) the judge did not have jurisdiction over [him], (3) there was an obvious irregularity on the face of the warrant, or (4) the procedures normally taken to issue a warrant were omitted.").

As a result, as to any false arrest or false imprisonment claim, his Complaint fails to "provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. (alteration in original) (citations omitted).

Accordingly, to the extent that his Complaint can be construed as stating either a claim of false arrest or false imprisonment, any such claim will be dismissed as well.

14

3. "Falsifying Government Documents and "Tampering with Evidence" Claims

Tampering with or fabricating physical evidence is a criminal offense under the Connecticut General Statutes. *See* Conn. Gen. Stat. Ann. § 53a-155(a) ("A person is guilty of tampering with or fabricating physical evidence if, believing that a criminal investigation conducted by a law enforcement agency or an official proceeding is pending, or about to be instituted, such person: (1) Alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such criminal investigation or official proceeding; or (2) makes, presents or uses any record, document or thing knowing it to be false and with purpose to mislead a public servant who is or may be engaged in such criminal investigation or official proceeding.").

Because this alleged criminal claim also can be construed as a fabrication of evidence claim under 42 U.S.C. Section 1983, see *Sykes*, 723 F.3d at 403 (*Pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest.") (quoting *Triestman*, 470 F. 3d at 474) (internal quotation marks omitted), the Court will consider whether this claim also survives this motion to dismiss.

"To maintain a claim of fabrication of evidence under § 1983, a plaintiff must show that 'an (1) investigating official (2) fabricate[d] evidence (3) that is likely to influence a jury's decision, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of liberty as a result.'" *Birch v. Town of New Milford*, No. 3:20-CV-1790 (VAB), 2023 WL 4684720, at *21 (D. Conn. July 21, 2023) (citing and quoting *Harasz v. Katz*, 239 F. Supp. 3d 461, 491 (D. Conn. 2017) and *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)).

The Defendants argue that "Plaintiff's bald legal conclusions that . . . the defendants falsified government documents, and that the defendants tampered with evidence . . . must be dismissed for failure to state a claim upon which relief can be granted because the plaintiff cannot privately enforce criminal statutes by filing a civil lawsuit." Mot. at 10.

In his objection, Mr. Harris simply states that he objects to "any and all motions and documents concerning of [sic] this case that the Defendant's lawyer has filed." Obj. at 1.

In response, the Defendants argue that "[t]he plaintiff has done nothing to challenge the well-settled principles that efforts to enforce criminal statutes through private civil lawsuits are routinely dismissed in this Court." Reply at 4.

In his sur-reply, Mr. Harris again objects to "any and all motions and documents concerning of [sic] this case that the Defendant's lawyer has filed." Sur-Reply at 1.

The Court disagrees.

For the same reasons that his kidnapping claim arising from criminal law fails, his tampering with or fabricating physical evidence claim against Officer Bodnar also arising from criminal law fails. *See supra* at 12.

Accordingly, any claim of tampering with evidence based on Connecticut's criminal code will be dismissed.

As to any potential fabrication of evidence claim under Section 1983, that claim too fails. Mr. Harris fails to allege that Officer Bodnar changed or falsified documents. Mr. Harris does allege that Officer Bodnar did not show him the warrant when asked and took out things from his wallet. *See* Compl. at 2 ("I asked to see the warrant and they refused to show me the original or the duplicate, so while I was sitting in Milford bullpen Officer Bodnar, went through my wallet and started throwing my papers in the trash."). But these conclusory allegations—which do not

16

specify what document or other evidence Officer Bodnar allegedly fabricated and the basis for

knowing that there was a fabrication—cannot be construed as a viable fabrication of evidence

claim, especially in the absence of further allegations linking any alleged fabricate evidence to

specific negative legal consequences for Mr. Harris. *See Frost v. New York City Police*

*Department*, 980 F.3d 231, 250 (2d Cir. 2020) ("[T]he fair trial right protects against deprivation

of liberty that results when a police officer fabricates and forwards evidence to a prosecutor that

would be likely to influence a jury's decision, *were that evidence presented to a jury.*" (citation

omitted) (emphasis in original)). In the absence of such allegations, Mr. Harris' fabrication of

evidence claim is nothing more than "a formulaic recitation of the elements of a cause of action

[which] will not do." *Twombly*, 550 U.S. at 555.

Accordingly, any purported fabrication of evidence claim under Section 1983 will be

dismissed.

### 4.   The Excessive Force Claim

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force

by a police officer in the course of effecting an arrest." *Jamison v. Metz*, 541 F. App'x 15, 19 (2d

Cir. 2013) (summary order) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010)); *see*

*also Jones v. Treubig*, 963 F.3d 214, 225 (2d Cir. 2020) (considering excessive force claims

against police prior to arraignment under the Fourth Amendment).

"A police officer violates the Fourth Amendment if the amount of force he uses in

effectuating an arrest is objectively unreasonable in light of the facts and circumstances

confronting the officer." *Lennox v. Miller*, 968 F.3d 150, 155 (2d Cir. 2020) (internal quotation

marks, citation, and alterations omitted). Because the test is objective reasonableness, "[a]n

officer's evil intentions will not make a Fourth Amendment violation out of an objectively

reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 490 U.S. at 397.

"[P]laintiffs in [excessive force] cases must also allege that the officers used more than *de minimis* force." *Feliciano v. Thomann*, 747 F. App'x 885, 887 (2d Cir. 2019) (citing *United States v. Walsh*, 194 F.3d 37, 47–48 (2d Cir. 1999)).

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See. Smith*, 21 F.3d at 501 ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (citation omitted)).

Mr. Harris has brought an excessive force claim against Officer Bodnar. *See* Compl. at 3.

The Defendants generally argue that "the complaint fails to set forth sufficient facts regarding the purported offending conduct of Officer Bodnar, and . . . . [i]n the absence of plausible allegations that Officer Bodnar was involved in the purported deprivations, which the plaintiff only attributes to Attorney Berchem, the claims against her must be dismissed as personal involvement is a prerequisite to damages." Mot. at 4–5. The Defendants also argue that "The plaintiff has failed to point to any specific force utilized other than the fact that Officer Bodnar placed him under arrest on an active warrant out of Bridgeport and because he was operating a motor vehicle without a license and resisted the officers' efforts to place him under arrest. In the absence of any specific claims of force utilized by Officer Bodnar, the plaintiff has failed to set forth a viable claim for excessive force." Mot. at 7.

In his objection, Mr. Harris simply states that he objects to "any and all motions and documents concerning of [sic] this case that the Defendant's lawyer has filed." Obj. at 1.

In response, the Defendants argue that "the plaintiff does not elaborate or allege that the defendants were personally involved in the alleged deprivations, which are necessary elements of his claims for damages under § 1983. . . . Nor has the plaintiff brought forth facts or argument to set forth a viable excessive force or derivative assault and battery claim against the defendants. In the absence of any facts to render the purported conduct of the defendants unreasonable or excessive, which burden the plaintiff has not met, his claims must fail." Reply at 4.

In his sur-reply, Mr. Harris again objects to "any and all motions and documents concerning of [sic] this case that the Defendant's lawyer has filed." Sur-Reply at 1.

The Courts disagrees.

First, Mr. Harris does not properly allege Officer Bodnar's personal involvement in any form of excessive force in this Complaint. The only allegation referring to any force that Officer Bodnar exerted on Mr. Harris is when Mr. Harris states that he "resisted the illegal arrest and they arrested me without my consent," Compl. at 2. Assuming that "they" refers at least in part to Officer Bodnar, the only allegation against Officer Bodnar is that she participated in the arrest of Mr. Harris which does not allege any use of force by anyone, let alone excessive force.

Without a specific allegation of Officer Bodnar's personal involvement in the use of excessive force, Mr. Harris has failed to properly state his excessive force claim. *See e.g.*, *Provost*, 262 F.3d at 155 (stating that personal involvement means "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts") (citation omitted); *Wright*, 21 F.3d at 501 ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991))); *see also Lawrence,* 2021 U.S.

19

Dist. LEXIS 87694, at *6 ("As a preliminary matter, [a plaintiff] must allege each defendant's personal involvement in the denial of his rights"); *see also Durr v. Slator*, 558 F. Supp. 3d 1, 20 (N.D.N.Y. 2021) ("A police officer is personally involved in the use of excessive force if he 'directly participates in an assault, or was present during the assault with reasonable opportunity to intercede on plaintiff's behalf yet failed to do so.'" (quoting *McRae v. City of Hudson*, No. 1:14-cv-236, 2015 WL 275867, *6 (N.D.N.Y. Jan. 21, 2015)).

Second, Mr. Harris does not allege the requisite more than *de minimis* force required to sustain an excessive force claim. Mr. Harris does not allege anything beyond a *de minimis* force because he fails to allege any particular use of force, nor any injury sustained from the purported excessive use of force. Without such allegations Mr. Harris cannot sustain his excessive force claim. *See e.g.*, *Jeanty v. City of New York*, No. 23-CV-9472, 2024 WL 5236462, at *25 (E.D.N.Y. Dec. 28, 2024) (finding that the "Plaintiff fail[ed] to allege anything beyond a *de minimis* use of force" when the plaintiff alleged that the defendants used excessive force by "grabbing, yanking, and pinning Plaintiff to a chair and wall, by forcibly grabbing [Plaintiff's] limbs and body and forcibly pulling him away from NAJ, and by possessing their guns and tasers in close proximity to [Plaintiff]"); *Cabello-Setlle v. Cnty. of Sullivan*, No. 21 CIV. 7477 (NSR), 2022 WL 4387637, at *8 (S.D.N.Y. Sept. 22, 2022) (granting motion to dismiss excessive force claim because the plaintiff "fail[ed] to allege any specific injury . . . let alone any injury that is beyond *de minimis*"); *see also Feliciano v. Thomann*, 747 F. App'x 885, 887 (2d Cir. 2019) ("Relatedly, plaintiffs in such cases must also allege that the officers used more than *de minimis* force. The record demonstrates that Elisa Feliciano's claim was insufficient under these standards. In fact, Elisa Feliciano conceded the absence of any injury, and that she had physically engaged the officers attempting to arrest her son.") (citations omitted).

Accordingly, having failed to properly allege an excessive force claim, Mr. Harris'

excessive force claim will be dismissed. *See Iqbal*, 556 U.S. at 679 ("[O]nly a complaint that

states a plausible claim for relief survives a motion to dismiss.").

## IV.    CONCLUSION

For the foregoing reasons, the Complaint is **DISMISSED**, and Defendants' motion to

dismiss is **GRANTED**.

To the extent deficiencies identified in this Ruling and Order can be remedied, Mr.

Harris may file an Amended Complaint by **April 25, 2025**. If an Amended Complaint is not

filed by **April 25, 2025**, then this Complaint will be dismissed, with any federal claims

dismissed with prejudice, and any state law claims dismissed without prejudice, and the case

will be remanded back to the Connecticut Superior Court for the Judicial District of Fairfield

at Bridgeport.

**SO ORDERED** at New Haven, Connecticut, this 28th day of March, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE